# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | | |
|---|---|---|
| SHELLEY KEITH, on behalf of herself and all others similarly situated, | ) ) ) | C/A No.: 2:20-CV-02869-RMG |
| Plaintiff, | ) ) | |
| v. | ) ) | **AMENDED CLASS ACTION COMPLAINT[1]** <br> **(Breach of Contract)** |
| GENERALI U.S. BRANCH, | ) ) | |
| Defendant. | ) ) ) | *Jury Trial Demanded* |

## AMENDED CLASS ACTION COMPLAINT

Plaintiff Shelley Keith ("Keith"), on behalf of herself and all others similarly situated, brings this action against Generali U.S. Branch ("Generali") for breach of contract damages under a proprietary and standardized travel insurance policy issued to Keith and thousands of other similarly situated individuals in South Carolina and the rest of the country.

Keith and similarly situated policy holders cancelled travel plans due to COVID-19 and its impacts. Generali categorically denied Keith's claim on the grounds that COVID-19 claims are not covered under the policy and, in any event, excluded as foreseeable as to any policy purchased on or after January 29, 2020. Keith disputes this coverage position.

Therefore, Keith, on behalf of herself and all others similarly situated, alleges and states as follows:

## PARTIES

1. Keith is a South Carolina resident residing in Berkeley County, South Carolina.

---

[1] Pursuant to Rule 15(a)(1)(B), Fed. R. Civ. P., Keith hereby exercises her right to unilaterally amend her Class Action Complaint as a matter of course. On October 2, 2020, Generali filed and served its Motion to Dismiss and Memorandum in Support (ECF No. 8) as its responsive pleading to Keith's Complaint. The instant Amended Class Action Complaint is filed within the twenty-one (21) day period provided by Rule 15(a)(1)(B), Fed. R. Civ. P.

2. Upon information and belief, Generali is a New York corporation that does business in South Carolina and is licensed by the South Carolina Department of Insurance to conduct business in South Carolina. Defendant Generali's statutory home office address is 7 WTC, 250 Greenwich Street, New York, NY 10007.

## JURISDICTION AND VENUE

3. This is an action asserting class action breach of contract claims under a proprietary, standardized travel insurance policy.

4. The Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332 because there is complete diversity of citizenship between the parties, and the amount in controversy exceeds the $75,000.00 jurisdictional requisite as further discussed below.

5. This Court also has subject matter jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA") (28 U.S.C. §§ 1332, 1453, 1711–1715). Diversity exists among the Plaintiffs and Defendants, there are more than one hundred members of the putative Class, and the amount in controversy exceeds $5 million. 28 U.S.C. § 1332(d)(2). In determining whether the $5 million amount in controversy requirement of 28 U.S.C. § 1332(d)(2) is met, the claims of the putative Class members are aggregated. 28 U.S.C. § 1332(d)(6).

6. This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367(a) because all claims alleged herein form part of the same case or controversy.

7. This Court has personal jurisdiction over Generali pursuant to S.C. Code § 36-2-802, because Defendants have an enduring relationship with the state of South Carolina. Defendants have sufficient minimum contacts with the state of South Carolina and/or otherwise intentionally and purposefully availed themselves of the privilege of conducting business in

South Carolina by providing products and services to residents of South Carolina and deriving substantial revenue from products and services sold in South Carolina. Accordingly, the exercise of personal jurisdiction over Generali complies with judicial notions of fair play and substantial justice.

8.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because it is the judicial district in which a substantial part of the events or omissions giving rise to the claims occurred and Generali transacts business, engaged in misconduct, and may be located in this District.

## FACTUAL ALLEGATIONS

9.     Keith, on behalf of herself and similarly situated entities, incorporates by reference the preceding paragraphs as if fully set forth herein.

10.    On or about February 21, 2020, Keith booked, through the website HomeAway, a vacation to St. John in the US Virgin Islands from June 28, 2020 to July 5, 2020. Keith and her family planned to fly to this destination.

11.    In connection with this purchase, Keith purchased a "CSA Travel Protection" travel insurance policy, bearing policy number 20052W0977 (the "Policy"), attached hereto as **Exhibit A** and incorporated herein by reference.

12.    The Policy defines "INSURER" as "Generali US Branch."

13.    The Policy is a Policy/Certificate Form series T001.

14.    Policy/Certificate Form series T001 is a proprietary and standard insurance contract sold by Generali, directly and through its agents, in South Carolina and all states other than California, Colorado, Oregon, and Virginia.[2]

---

[2] California is Underwritten by Generali Assicurazioni Generali S.P.A. (U.S. Branch), Colorado is Underwritten by Assicurazioni Generali - U.S. Branch, Oregon is Underwritten by Generali U.S. Branch DBA The General Insurance

15. Policy/Certificate Form series T001 policies including, but not limited to, the Policy are underwritten by Generali U.S. Branch, New York, New York; NAIC # 11231.

16. Severe acute respiratory syndrome coronavirus 2 (SARS-CoV-2) is a novel strain of coronavirus that causes coronavirus disease 2019 (COVID-19) (the "Virus").

17. The Virus spreads via highly efficient human-to-human respiratory transmission. Scientists learn more about the Virus every day.

18. As of this filing, the Virus has infected millions of people in United States and around the world. To date, over two-hundred and ten thousand Americans have died. South Carolina has also been severely impacted with over one hundred thousand reported cases and three thousand deaths.

19. Not since the Spanish Influenza in 1918 has the world experienced such an unprecedented pandemic of such scale and consequence.

20. Keith decided to cancel her family's trip for several compounding and mutually reinforcing reasons including: (1) the prevalence of the Virus throughout South Carolina, the rest of the United States, and internationally; (2) her well-founded fear and apprehension over traveling during a once in a century global pandemic; (3) various governmental and private health and travel regulations, advisories, and recommendations issued in response to the Virus; and (4) the rescheduling of her son's high school graduation from June 4, 2020 to June 30, 2020 as a result of the pandemic.

21. On June 2, 2020, Keith filed a travel cancellation claim with Generali, seeking reimbursement under the Policy for the non-refundable monies ($5,254.88) spent on her trip.

Company of Trieste & Venice, and Virginia is Underwritten by The Generali Insurance Company of Trieste and Venice - U.S. Branch.

22. Keith submitted her claim online. Generali's claim website contained a prominent notification that claims due, in any way to the Virus, would not be honored because, among other things, Generali's contention that the Virus was a foreseeable and excluded event for plans purchased on or after January 29, 2020.

23. The claim website included a feature designed to prompt insureds to select a "Claim Reason." Given Generali's position on Virus-related claims and the warning to insureds that such claims would not be covered, there was no option available to select that would encompass a Virus-related claim. Therefore, Keith selected "Other."

24. In her explanation for the claim, Keith mentioned that her son's graduation was moved from June 4, 2020 to June 30, 2020 due to the pandemic. Her travel itinerary was from June 28, 2020 to July 5, 2020. Keith supplied ample background and support for the extension of the school's operating session.

25. Keith avoided a lengthy discussion of her family's health concerns and the litany of recommendations and advisories against non-essential travel, *even though these were and have always been part of the reason she canceled her trip,* because Generali's claim website unequivocally stated that Virus-related claims would be denied.

26. Generali intentionally designed its claim website to discourage insureds from submitting Virus-related claims.

27. The Policy's "Trip Cancellation Benefit Rider" states as follows:

Benefits will be paid, up to the amount in the Schedule, for the forfeited, prepaid, non-refundable, non-refunded and unused published Payments that you paid for your Trip, if you are prevented from taking your Trip due to one of the following unforeseeable Covered Events that occur before departure on your Trip to you or your Traveling Companion, while your coverage is in effect under this Policy.

28. The Policy includes, but is not limited to, the following "Covered Events":

- 4. "Being … Quarantined;"[3]

- 13. "The school where you attend must extend its operating session beyond its predefined school year due to unforeseeable events commencing during the coverage effective period. The school year extension dates must fall in your Trip dates in order for this coverage to be available. Extensions due to extracurricular or athletic events are not covered."

- 21. "Your Accommodations at your destination made inaccessible due to … other natural disaster."

29. By the time Keith made her decision to cancel the trip, she – like most Americans – had received a litany of information about the Virus and its adverse impacts from a variety of authoritative sources. Also, like many others, the pandemic had caused the extension and rescheduling of school operating sessions to include ordinary school functions like graduations.

30. By way of example but not limitation, Keith references the following authoritative recommendations from public health experts:

  a. The CDC "recommends that travelers avoid all nonessential travel to US Virgin Islands" and notes "[w]idespread transmission of COVID-19 has been reported globally."[4] The CDC similarly recommends against nonessential travel to a host of other countries around the world.

  b. The CDC provides the following "Key Points"[5] regarding travel, generally, during the global pandemic:

      i. Widespread ongoing transmission of a respiratory illness caused by the novel coronavirus (COVID-19) is occurring globally.

      ii. **CDC recommends that travelers avoid all nonessential international travel.**

---

[3] The Policy defines "Quarantined" as: "QUARANTINE means the enforced isolation of you or your Traveling Companion, for the purpose of preventing the spread of illness, disease or pests."
[4] https://www.cdc.gov/coronavirus/2019-ncov/travelers/map-and-travel-notices.html
[5] https://wwwnc.cdc.gov/travel/notices/warning/coronavirus-global

      iii. Older adults and people of any age with serious chronic medical conditions are at increased risk for severe disease.

      iv. There may be limited access to adequate medical care in affected areas.

      v. US residents may have difficulty returning to the United States.

      vi. Travelers should avoid contact with sick people and wash their hands often with soap and water for at least 20 seconds. If soap and water are not readily available, use an alcohol-based hand sanitizer that contains at least 60% alcohol.

      vii. **All international travelers should stay home for 14 days after returning from travel, monitor their health, and practice social distancing.**

      (Emphasis in original).

c. The CDC describes the "current situation" as follows:

      i. CDC recommends that travelers avoid all nonessential international travel.

      ii. The Department of State advises U.S. citizens to avoid all international travel due to the global impact of COVID-19. In countries where commercial travel options remain available, U.S. citizens should arrange for immediate return to the United States, unless they are prepared to remain abroad for an indefinite length of time. For more information about possible travel restrictions, contact your destination's U.S. Embassy or Consulate or visit the Department of State website.

      iii. Widespread ongoing transmission of a respiratory illness caused by a novel (new) coronavirus (COVID-19) is occurring globally. During the COVID-19 pandemic you may be exposed to the virus while traveling—from sick persons at airports, or on airplanes, ships, trains, or buses. Some health care systems are becoming overwhelmed and there may be limited access to adequate medical care in affected areas. Many countries are implementing travel restrictions and mandatory quarantines, closing borders, and prohibiting non-citizens from entry with little advance notice. Airlines have cancelled many international flights and in-country travel may be unpredictable. If you choose to travel internationally, your travel plans may be severely disrupted, and you may have to remain outside the United States for an indefinite length of time.

      iv. Illness with COVID-19 has ranged from mild to severe. Signs and symptoms of infection include fever, cough, and trouble breathing. This new coronavirus has caused severe disease and death in patients who developed pneumonia. Risk factors for severe illness are not yet clear, although older adults and people of any age with serious chronic medical conditions are at higher risk for severe illness.

31. Foreign countries themselves have imposed various travel restrictions for American travelers.

32. The bottom line is that nonessential travel during a global pandemic runs counter to government and private health and travel regulations, recommendations, and advice not to mention the personal health and safety of travelers, their families, and others. These authorities, taken in their totality, constitute a travel "quarantine" in effect when Keith decided to cancel her trip.

33. Further, the Virus constitutes a "natural disaster," which in conjunction with the aforementioned authorities taken in their totality, renders travel accommodations "inaccessible."

34. Also, the Virus caused the rescheduling and extension of various school related operations, including graduations. This was not foreseeable during the coverage period.

35. In response to Keith's claim, on June 15, 2020, Generali, through its claims administrator CSA Travel Protection and Insurance Services, responded that "the cause of loss is not due to an event that is covered by the plan you purchased," and, in any event, was excluded as a "foreseeable event under any plans purchased on or after January 29, 2020." This claim denial provided no basis for the significance or relevance of the January 29, 2020 date. See email attached hereto as **Exhibit B** and incorporated herein by reference.

36. Generali, through CSA Travel Protection and Insurance Services, offered a "voucher for the full amount of the insurance premium you paid to be applied to a future trip,"

but refused to pay the actual benefits due and owing Keith under the Policy, namely the non-refundable portion of Keith's travel expenses.

37. Upon information and belief, Generali and its claim administrator systematically denied all Virus-related travel cancellation claims associated with Policy/Certificate Form series T001 bound prior to and after January 29, 2020.

38. The June 15, 2020 denial correspondence Keith received was a boilerplate, form denial not tailored to Keith's specific and individual claim.

39. The World Health Organization did not declare the coronavirus a pandemic until March 11, 2020.

40. It was not until March 13, 2020, that the President of the United States declared a national emergency over the coronavirus pandemic.

41. The aforementioned CDC health and travel regulations and advisories were issued *after* a pandemic was declared by the World Health Organization and the President of the United States.

42. The Virus was not a foreseeable event for Keith and the members of the putative class until a pandemic was declared by the World Health Organization, at the earliest, and the President of the United States, at the latest.

## CLASS ACTION ALLEGATIONS

43. Keith brings this action pursuant to Rule 23 of the Federal Rules of Civil Procedure on behalf of itself and all other businesses and individuals similarly situated pursuant to Rules 23(a) and (b)(3).

44. The NATIONWIDE CLASS is defined as follows:

**All individuals who:**

**(1) purchased travel insurance from Generali under Policy/Certificate Form series T001 prior to March 13, 2020;**

**(2) cancelled covered travel plans because of one or more Covered Events related to the Virus;**

**(3) suffered damages in the form of non-refundable deposits or other monies paid for travel and covered by the aforementioned policies.**

(the "Class").

45. Excluded from the Class are insureds located in California, Colorado, Oregon, and Virginia.

46. Excluded from the Class are Generali, its employees, officers, directors, legal representatives, heirs, successors, and wholly or partly owned subsidiaries or affiliated companies; Class Counsel and their employees; and the judicial officers and their immediate family members and associated court staff assigned to this case.

47. Keith reserves the right to modify, expand, or amend the definition of the proposed Class following the discovery period and before the Court determines whether class certification is appropriate.

## **Numerosity**

48. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(1).

49. Generali sold identical, unique travel insurance policies to thousands of persons throughout South Carolina and around the United States.

50. Joinder is not feasible given the number of policies and insureds with identical claims.

51. The identity of Class members is readily ascertainable from the records of Generali and its agents. Specifically, Generali and its agents possess records confirming, among other things, the identities of those individuals who purchased Policy/Certificate Form series T001 travel insurance policies prior to March 13, 2020.

52. Keith will provide appropriate notice to the certified Class in compliance with Fed. R. Civ. P. 23(c)(2)(A) and/or (B), to be approved by the Court after class certification, or pursuant to court order under Fed. R. Civ. P. 23(d).

### Commonality

53. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) because there are questions of law and fact that are common to each Class member.

54. These common questions predominate over any questions affecting Keith or any other entity in the Class. The common questions of law and fact include, but are not limited to, the following:

   a. Whether Policy/Certificate Form series T001, a proprietary and standard travel insurance policy form sold by Generali, covers travel cancellations due to Virus and one or more Covered Event under the policy.

   b. Whether the Virus was an objectively foreseeable to a reasonable person prior to March 13, 2020 when a pandemic was declared.

   c. Whether Generali breached its contracts with Keith and Class members for denying Virus-related travel cancellation claims on policies sold prior to March 13, 2020.

   d. Whether Keith and Class members have suffered damages.

### Typicality

55. This action satisfies the requirements of Fed. R. Civ. P. 23(a)(3) because Generali issued Keith and thousands of other individuals the same unique and proprietary insurance policy, namely Policy/Certificate Form series T001.

56. Keith and similarly situated policyholders have all suffered travel cancellation losses in response to the Virus and have satisfied one or more Covered Events under the exact same form policy issued by Generali.

57. Generali has denied or plans to deny such claims all for the same, broad grounds articulated in the denial letter sent to Keith discussed above. These grounds for denial do not implicate any specific facts relevant to Keith's and similarly situated policyholders' claims.

58. Rather, Generali's position is that travel cancellation plans, due to the Virus, are excluded from coverage generally and that policies purchased after January 29, 2020 will not respond due to the "foreseeability" of the Virus.

59. The determination whether Keith's claim is covered under the Policy will control whether coverage is afforded to thousands of similarly situated persons with the identical policy and claim.

## Adequacy of Representation

60. The requirements of Fed. R. Civ. P. 23(a)(4) are satisfied because Keith is committed to litigating this action, will fairly and adequately protect the interests of the Class members, and has retained competent and experienced attorneys with experience litigating class action cases generally, and insurance coverage disputes specifically. Keith has no interests antagonistic to or in conflict with other putative class members.

## Actions Generally Apply to the Class

61. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds that apply generally to the Class, so that final injunctive relief or corresponding relief is appropriate respecting the Class as a whole.

## Superiority/Predominance

62. This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3), because questions of law and fact common to Keith's claims and the claims of the Class members predominate over questions of law and fact affecting only individual Class members, such that a

class action is superior to other methods for the fair and efficient adjudication of this controversy. The issues in relation to Keith's claims are similar to the issues relating to the claims of the other Class members, such that a class action provides a far more efficient vehicle to resolve the claims than a myriad of separate lawsuits.

63. Moreover, the nature of Keith's claims and the Class's claims against Defendants do not lend themselves to piecemeal litigation. The parties' interests – not to mention the judicial system's interests – will be best served by efficiently litigating these common claims and issues under a single, nationwide class action case.

64. Keith and the Class members are not the only entities in the United States with losses caused in response to COVID-19 and the virus itself. However, Keith and the Class members distinguish themselves from everyone else due to the unique and proprietary nature of the policies issued by the Defendants.

65. Keith is unaware of any issue that would pose an obstacle to the management of this action that would preclude its maintenance as a class action. The Court may, on motion of Plaintiffs or on its own determination, certify nationwide and statewide classes for claims sharing common legal questions; utilize the provisions of Fed. R. Civ. P. 23(c)(4) to certify particular claims, issues, or common questions of law or of fact for class-wide adjudication; certify and adjudicate bellwether class claims; and utilize Fed. R. Civ. P. 23(c)(5) to divide any Class into subclasses.

**FOR A FIRST CAUSE OF ACTION**
**(Breach of Contract)**

66. Keith, on behalf of herself and similarly situated persons, incorporates by reference the preceding paragraphs as if fully set forth herein.

67. Keith and the Class members purchased proprietary and standardized CSA Travel Protection travel insurance policies from Generali (Policy/Certificate Form series T001) and booked non-refundable travel prior to the pandemic declaration by the World Health Organization and the President of the United States.

68. Prior to these declarations, the pandemic was not an objectively foreseeable event insofar as it could adversely impact travel plans months into the future.

69. Due to the unprecedented spread of the Virus, Keith and the Class Members ultimately decided to cancel travel plans that were covered by the General policies.

70. These cancellations stem from, among other things, (1) the prevalence of the Virus throughout the United States and internationally and travelers' well-founded fears and apprehensions over traveling during a once in a century global pandemic; (2) various governmental and private health and travel regulations, advisories, and recommendations issued in response to the Virus; and (3) the extension of the school year including, but not limited to, graduation ceremonies due to the Virus.

71. These cancellations due to the Virus trigger one or more "Covered Events" under the Policy including, but not limited to, the following:

> 4. "Being … Quarantined;"
>
> 13. "The school where you attend must extend its operating session beyond its predefined school year due to unforeseeable events commencing during the coverage effective period. The school year extension dates must fall in your Trip dates in order for this coverage to be available. Extensions due to extracurricular or athletic events are not covered."
>
> 21. "Your Accommodations at your destination made inaccessible due to … other natural disaster."

72. The pandemic was not an objectively foreseeable event until it was declared so by the World Health Organization, or, when the declaration was made by the President of the United States.

73. Generali breached its contract with Keith and the Class by failing to pay these travel cancellation claims.

74. Additionally, Generali actively sought to dissuade insureds from submitted valid, Virus-related claims by including prominent – and false – information on the claim website that Virus-related claims would not be honored.

75. These breaches caused Keith and the Class members actual, consequential, and other damages.

## PRAYER FOR RELIEF

WHEREFORE, Keith, on behalf of herself and similarly situated persons, respectfully prays unto the Court as follows:

a. Declaring this action to be a proper class action maintainable pursuant to Rule 23(a) and Rule 23(b)(2) and (3) of the Federal Rules of Civil Procedure and declaring Keith and their counsel to be representatives of the Class;

b. Awarding Keith and the Class actual, consequential, and other available breach of contract damages;

c. Awarding Keith and the Class attorneys' fees and costs;

d. Awarding Keith and the Class prejudgment interest in an amount allowed by law;

e. For a trial by jury on any triable issues; and

f. For such other and further relief as the Court may deem just and proper.

Respectfully submitted,

**McCULLOUGH KHAN, LLC**

s/Ross A. Appel
Clayton B. McCullough, Fed. Bar # 7120
Ross A. Appel, Fed. Bar # 11434
359 King Street, Suite 200
Charleston, SC 29401
(843) 937-0400
(843) 937-0706 (fax)
Clay@mklawsc.com
Ross@mklawsc.com

ATTORNEYS FOR PLAINTIFF

October 20, 2020
Charleston, South Carolina